ROBERT Y. LISCO, APPELLEE, v. WILLIAM HUSMANN ET AL., APPELLANTS.

FILED APRIL 16, 1915. No. 18389.

Partnership: DISSOLUTION. Where the defendants held possession of a farm under a farm contract and also of certain live stock and farming implements, and the evidence shows a breach of the contract because the live stock is neglected and mistreated, and farm implements unnecessarily injured, and a farm building destroyed, there is a sufficient reason for the dissolution of the partnership by the judgment of a court.

APPEAL from the district court for Platte county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*Albert & Wagner,* for appellants.

*Garlow & Long, contra.*

HAMER, J.

The plaintiff and appellee, Robert Y. Lisco, was the owner of a farm, a lot of live stock, and farming implements. He entered into a farm contract with the defendants William and Albert Husmann. After the defendants had been in possession of the farm, live stock and implements for about a year, the plaintiff sued them, seeking a dissolution of the contract, a division of the profits, and such relief as the contract contemplated might be given. There was a finding and judgment for the plaintiff in the district court for Platte county, and from this finding and judgment the defendants appeal.

The contract was entered into on the 28th day of August, 1911. Omitting the signatures, it is as follows:

"This lease, made and entered into this 28th day of August, A. D. 1911, by and between Robert Y. Lisco, of Columbus, Nebraska, party of the first part, and William Husmann and Albert Husmann, both of Platte county, Nebraska, parties of the second part, Witnesseth: That the said party of the first part has this day leased unto the said parties of the second part the following described real estate, to wit: the southwest quarter of section 26, and lots numbered 6 and 7 of said section 26, all in township 17, range one west of the 6th P. M. in Platte county, Nebraska, from the first day of September to the first day of March, 1917.

"In consideration of the leasing of the premises as aforesaid, the said parties of the second part covenant and agree to pay said party of the first part one-half of all the receipts from the grain, hay, stock, etc., raised on said premises during the term of this lease, said payments to be made at the time of the sale of any such products.

"The party of the first part and the parties of the second part are each to provide one-half of all machinery and agricultural implements needed to properly work said

place; one-half of all seed needed for seeding purposes; one-half of all the horses needed to properly till said land; it being the intention of the parties hereto that said first party is to furnish the land, and said second parties are to furnish and perform the labor necessary to properly care for the stock on said farm and to properly till said land, and each to share equally in the net proceeds thereof, i. e., said Lisco is to receive fifty per cent. of the net proceeds and said Husmanns are to receive fifty per cent. of the net proceeds.

"The personal property which is now upon said premises, and in which both first and second parties have an equal share, is contained in a list hereto attached and which is made a part of this contract and marked exhibit A. Also the terms noted on said exhibit regarding the hay, corn, oats and potatoes is hereby made a part of this contract and is so considered by the parties hereto.

"Should fences need repair, first party is to furnish all wire necessary therefor, and second parties are to perform all labor and furnish all fence posts; said posts, however, to be cut from the above premises.

"First party reserves one bedroom in the house now on said premises, and also reserves the small garden patch lying east of the house and inclosed by a fence.

"It is made the duty of the second parties hereto to keep a strict account of the sales of all products of every kind and description raised on said farm, and a strict account of the sales of all stock sold therefrom, and report same to said first party. It is agreed between the parties hereto that all money received from the sale of any property from said farm shall be deposited in the German National Bank in the name of Husmann Brothers, and all expenses in connection with the operation of said farm shall be paid by checks drawn by said Husmann Brothers on said bank.

"All materials needed for the repair of the buildings on said place shall be furnished by said first party; the labor, however, to be performed by second parties.

"Second parties are privileged to cut sufficient wood on said premises to properly heat the house thereon, and said first party is also privileged to go upon said place to cut wood for his use.

"Second parties agree that at the expiration of this lease to yield up possession of the place in as good condition as it now is, the usual wear, inevitable accidents and loss by fire excepted. In case of the nonfulfilment of any of the terms and conditions of this lease, first party may at his election declare this lease at an end. Signed in duplicate the day and year first above written."

The paper referred to in the contract as exhibit A contains a list of 5 horses, 1 colt, 22 cows, 8 yearling heifers, 20 calves, 132 sheep, 1 boar, 3 brood sows, and 5 gilts; also, a manure spreader, 2 mowers, a hay rake, a hay stacker, a hay sweep, 2 hay racks, 1 hay loader, 1 disc, 1 plow, 1 cultivator, 1 harrow, 1 weeder, 1 potato planter, a potato digger, a potato sprayer, 2 potato shovels, a grindstone, a cream separator, a cream scale, and 5 sets of work harness. Each article is valued at a specified price, and together all the animals and the machinery and implements named are valued at $3,240. There is a further provision that the hay is to be measured October 1 at $10 a ton, and the oats to be at the market price when threshed, and the corn to be at the market price when husked, and the potatoes to be at the market price when put in the cellar. It is claimed by the appellants that the parties acted upon the theory that the contract was to begin on the 1st day of September, 1911; that the defendants took charge of the premises and stock at that time.

The trial took place July 2, 1913, and the case was taken under advisement until October 14, 1913, when the court found and decreed as follows: "(1) That a valid copartnership existed between the plaintiff and the defendants. (2) That the plaintiff is entitled to a dissolution of the copartnership agreement and forfeiture of the lease as prayed in his petition. (3) That the plaintiff is entitled to receive one-half of the assets, and the defendants are entitled to receive one-half of the assets, of the copartner-

ship. (4) That, in case the plaintiff and defendants fail within 60 days to make a division and adjustment of the partnership assets, then plaintiff is entitled to have a receiver appointed to wind up and adjust the copartnership affairs. It is therefore considered, adjudged and decreed by the court that the contract of copartnership heretofore existing between the plaintiff and the defendants be and the same hereby is dissolved and terminated; that the lease set forth in the petition be and the same hereby is declared forfeited and terminated; that the defendants shall render to the plaintiff a strict account of their doings in relation to the copartnership, and a complete statement of all personal property disposed of and the proceeds therefrom, together with an inventory of all copartnership property on hand; that the copartnership assets be equally divided between the plaintiff and the defendants, and, in case they fail to effect a full settlement within 60 days from this date, a receiver shall be appointed by the court, with power to reduce the copartnership assets to cash and wind up and adjust the affairs of the copartnership; that the defendants be adjudged to pay the costs of this action."

The finding is for the dissolution of the agreement and the forfeiture of the farm contract; that the plaintiff should receive one-half of the assets and the defendants one-half of the assets of the copartnership, and, in case of failure to make a division that a receiver shall be appointed to wind up the affairs. The decree forfeits and terminates the contract, provides that the defendants shall render a strict account in relation to the doings of the business, a complete statement of all personal property disposed of and all "copartnership property on hand," that the copartnership assets be equally divided; that, in case plaintiff and defendants fail to effect a full settlement within 60 days, a receiver be appointed, "with power to reduce the copartnership assets to cash and wind up and adjust the affairs of the copartnership."

The petition alleges the failure to comply with the contract which is set out in the findings and decree of the dis-

trict court. An examination of the evidence seems to sustain the judgment of the district court.

One horse got an abscess on his shoulder. This resulted in the sweeny. This horse had not been taken care of according to the directions of the veterinary surgeon, and the injury was claimed to be permanent because of neglect. A colt that was castrated was also neglected and suffered because of the neglect. The three mares were worked down until they were very thin in flesh and their shoulders "were all galded." These animals seem to have been fat and healthy when they were turned over to the defendants. It seems that they agreed orally to milk at least 12 of the cows. They never did so. They got down to milking just one cow. The udders of the cows were injured because they were not milked. These cows were in good condition when turned over to the defendants. There were also 20 calves. There is testimony tending to show that the calves were nearly starved. They were kept in a lot where there was insufficient grass, and were not given alfalfa to eat, although there was plenty there out of which they might have been fed. These were all high-grade cattle. There were 132 sheep also in good condition when turned over to the defendants. They were high-grade Shropshire sheep. They were not taken care of, and the result was a failure of a crop of lambs. There was a sheep shed in which to shelter them, but the defendants tore it down. They neglected to give the hogs fresh water, and compelled them to drink manure water down by the barn. An examination of the evidence shows that the farm implements were badly treated.

It is claimed by the attorneys for the appellants that the evidence fails to sustain the finding and judgment of the district court. There is something of an attempt to show that the defendants complied with their contract, but we are not able to say that the findings and judgment of the district court are wrong. The facts alleged in the petition all have testimony tending to support them.

In *Veith v. Ress*, 60 Neb. 52, it is said: "It is next contended that the petition does not state facts sufficient to

warrant the court in taking cognizance of the cause. We think it does. It shows insolvency, dissension between the partners, probability of waste, and necessity for an accounting and dissolution."

In *Carroll v. Cunningham*, 73 Neb. 295, there was a demurrer to the petition because it did not state a cause of action. It set out that defendant had large "accumulations of and belonging to the partnership, which he refuses to account for or make division of in compliance with the agreement and the request of plaintiffs * * * and which he threatens to sell and dispose of." There is a similarity in that case to this one, except the specific acts of extreme negligence set forth in the instant case. The judgment of the district court is affirmed. Plaintiff not being entirely without fault, each party is required to pay his own costs.

AFFIRMED.

MORRISSEY, C. J., LETTON and FAWCETT, JJ., not sitting.